UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANK LEE DEARWESTER,                         No.  2:13-cv-2064 MCE DB P

          Plaintiff,

    v.                                                    FINDINGS AND RECOMMENDATIONS

COUNTY OF SACRAMENTO,[1]

          Defendant.

       Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983.  In his complaint, plaintiff alleges defendant's establishment of a postcard-only mail policy violated his First Amendment rights.  Before the court are defendant's motions for summary judgment and to strike, and plaintiff's request for sanctions.  Defendant seeks summary judgment on the grounds that plaintiff lacks standing and, in the alternative, that the postcard-only policy is constitutional.  Defendant moves to strike plaintiff's late-filed opposition documents.  Plaintiff requests sanctions on the grounds that defendant filed the motion for summary judgment in bad faith.  For the reasons set forth below, the court recommends denial of all these pending motions.

---

[1] As noted by defendant County of Sacramento, plaintiff originally named the Sacramento County Sheriff's Department as the defendant in this action.  (See ECF No. 20 at 1.)

**ALLEGATIONS IN THE COMPLAINT**

Plaintiff alleges that a Sacramento County Sheriff's Department ("Sheriff's Department") policy limited his incoming personal mail at the Sacramento County Jail ("Jail") to only postcards, in violation of his First Amendment rights. Plaintiff attaches a copy of a document entitled "NOTICE-REVISED MAIL POLICY" ("Notice") that states that effective February 10, 2013, "all incoming inmate mail, *with the exception of legal mail and other approved correspondence listed below,* will be limited to postcards. Incoming mail which is not in postcard form or otherwise approved will be returned to the sender." (Emphasis in original.) Plaintiff claims that he received no personal mail from his family and friends for over three months as a result of the policy.[2] (Compl. (ECF No. 1) at 3, 6.)

**PROCEDURAL BACKGROUND**

Plaintiff's complaint was filed on October 4, 2013. On October 4, 2014, defendant moved to dismiss the complaint on the grounds that: (1) plaintiff lacked standing to assert claims on behalf of third-party inmates or plaintiff's family and friends; (2) plaintiff failed to allege a sufficient injury as a result of the postcard-only policy; and (3) plaintiff's request for injunctive relief was moot because he was no longer incarcerated at the Jail. Defendant's motion was granted with respect to issues (1) and (3) and denied with respect to issue (2). The court held that plaintiff's complaint alleged a sufficient "injury in fact" to establish standing to bring his First Amendment claim based on the postcard-only policy. Specifically, the court found sufficient plaintiff's allegations that he was unable to have contact with family and friends for the three

---

[2] In his opposition to the summary judgment motion, plaintiff states that his First Amendment claims include both a violation of his free speech rights and a violation of his religious freedoms. (See ECF No. 56 at 17.) However, the damage plaintiff consistently claims as a result of the postcard-only policy is the lack of communication with friends and family for three months. (Compl. (ECF No. 1 at 3).) Plaintiff never asserted in his complaint that his religious freedoms were affected. The court finds plaintiff has not asserted a cognizable First Amendment claim for a violation of his right to the free exercise of religion because he has not alleged it was affected by the postcard-only policy. See Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007) (To state a claim of a First Amendment violation of the free exercise of religion, a plaintiff must show, among other things, that the prison regulation "substantially burdened . . . sincerely-held religious beliefs.") To the extent plaintiff is attempting to assert a claim under the Religious Land Use and Institutionalized Persons Act, the court has previously rejected that potential claim. (June 12, 2015 Order (ECF No. 32) at 5.)

1    months leading up to his criminal trial.  (ECF No. 32 at 4.)   Thus, the case proceeds on plaintiff's

2    individual First Amendment claim that he suffered injury as a result of the postcard-only policy.

3    (ECF Nos. 32, 34.)

4          A discovery and scheduling order, which issued on August 25, 2015, set a December 11,

5    2015 deadline for discovery, including motions to compel discovery, and a March 4, 2016

6    deadline for all other pretrial motions.  (ECF No. 36.)  On December 10, 2015, defendant filed a

7    motion to compel plaintiff to respond to interrogatories and a request for production of

8    documents.  On January 8, 2016, plaintiff filed a motion to compel defendant to respond to

9    interrogatories.  On April 6, 2016, a previously-assigned magistrate judge granted defendant's

10   motion and denied plaintiff's.  (ECF No. 55.)

11         On March 4, 2016, defendant filed the present motion for summary judgment.  (ECF No.

12   52.)  Defendant argues that because the postcard-only policy never went into effect, plaintiff has

13   failed to show he suffered an injury based on the policy and he therefore lacks standing.  In the

14   alternative, defendant argues that even if it had been implemented, the postcard-only policy did

15   not violate the First Amendment.  Plaintiff did not file a timely response to the motion.  On April

16   4, 2016, defendant filed a "Reply to Plaintiff's Non-opposition."  (ECF No. 54.)  Shortly

17   thereafter, on April 11, 2016, plaintiff filed an opposition.  (ECF No. 56.)   Plaintiff's

18   "Opposition" includes the following documents:

19      •  A request for sanctions against defendant for filing the motion for summary judgment "in

20         bad faith and for purpose of delay" (ECF No. 56 at 1-2)

21      •  Memorandum of Points and Authorities (id. at 4-20)

22      •  Statement of Disputed and Undisputed Facts (id. at 22-27)

23      •  Objections to Defendant's Exhibits (id. at 28-32)

24      •  Exhibits, including plaintiff's declaration (id. at 33-133)

25   In a reply filed on April 18, 2016, defendant moves to strike that opposition.  (ECF No. 57.)  On

26   May 2, 2016, plaintiff filed a document entitled "Plaintiff's Reply Countering Defendant's Claim

27   of Non-opposition to Motion for Summary Judgment."  (ECF No. 59.)  Therein, plaintiff argues

28   that his opposition was filed on time.

On August 8, 2016, plaintiff filed numerous documents, including a memorandum of points and authorities in support of his opposition to defendant's summary judgment motion, a statement of disputed and undisputed facts, and objections to some of defendant's exhibits. (ECF Nos. 65-71.) These filings appear to be the same as the large, combined filing plaintiff made on April 11, 2016, with one exception; the June 24, 2016 Declaration of Lester Dearwester. (ECF No. 66.) Defendant moves to strike all of plaintiff's August 8 filings, including that declaration. (ECF No. 73.) Before considering defendant's motion for summary judgment, the court will consider the motions to strike.

**DEFENDANT'S MOTIONS TO STRIKE**

Defendant moves the court to strike plaintiff's initial opposition filed April 11, 2016 and also moves to strike the opposition documents filed by plaintiff on August 8, 2016.

**I.      Motion to Strike April 11, 2016 Opposition**

In his reply brief, defendant makes a short argument that plaintiff's April 11, 2016 filings should be stricken as untimely. (ECF No. 57 at 2.) According to defendant, plaintiff's April 11 filing was fourteen days late. In his response to the motion, plaintiff contends that he did not receive a copy of the motion for summary judgment until March 16, 2016. (ECF No. 59.) Plaintiff cites to exhibits which he claims show the date the prison received the motion in the mail. However, no exhibits were included with plaintiff's May 2 filing. (See ECF No. 59.)

Defendant filed its motion for summary judgment on March 4, 2016. Pursuant to Local Rule 230(l), an opposition to that motion was due 21 days after service of the motion. When service is effected by United States mail, three days are added to this filing deadline. See Fed. R. Civ. P. 6(d). In addition, under the "mailbox rule," the court considers the date a prisoner turns over his filing to prison authorities for mailing as the filing date. See Houston v. Lack, 487 U.S. 266, 270 (1988). The court applies this rule to pro se prisoner legal filings to ensure that their filings are not unfairly barred as untimely due to delays beyond their control. See Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009).

////

////

4

1    Using these measures, plaintiff's opposition to the summary judgment motion was due March

2    28, 2016.  Plaintiff signed the proof of service for his opposition papers on April 6, 2016.  (ECF

3    No. 56 at 21.)  Therefore, plaintiff's filing was nine, not fourteen, days late.

4    Given the brief delay in filing, the court's obligation to construe pro se filings liberally,

5    plaintiff's contention that he did not receive the filing until March 16, and the fact that defendant

6    does not allege he suffered any prejudice as a result of the untimely filing, the court will

7    recommend denial of defendant's motion to strike and will consider below plaintiff's opposition

8    documents filed on April 11, 2016.

9    **II.       Motion to Strike August 8, 2016 Opposition Documents**

10   Defendant moves to strike as redundant all of plaintiff's August 8 filings except the

11   declaration of Lester Dearwester, which defendant moves to strike as untimely.  (ECF No. 73.)  In

12   the alternative, defendant objects to the substance of Lester Dearwester's declaration and argues

13   that it does not change defendant's position that summary judgment in this matter is appropriate.

14   Initially, the court notes that defendant moves to strike under Rule 12(f) of the Federal

15   Rules of Civil Procedure.  However, Rule 12(f) does not apply because the documents plaintiff is

16   attempting to strike are not part of the pleadings.  See  Whittlestone, Inc. v. Handi–Craft Co., 618

17   F.3d 970, 974–75 (9th Cir. 2010) (Rule 12(f) is limited to striking from a pleading only those

18   specific matters which are provided for in the rule).  "The Federal Rules of Civil Procedure do not

19   provide for a motion to strike documents or portions of documents other than pleadings.  Instead,

20   trial courts make use of their inherent power to control their dockets, Anthony v. BTR Auto.

21   Sealing Sys., 339 F.3d 506, 516 (6th Cir. 2003), when determining whether to strike documents

22   or portions of documents."  Zep Inc. v. Midwest Motor Supply Co., 726 F. Supp. 2d 818, 822

23   (S.D. Ohio 2010) (some citations omitted); see also Franklin v. United States, No. 1:10–cv–

24   00142–LJO–MJS, 2012 WL 5954016, at *1 (E.D. Cal. Nov. 28, 2012).

25   With respect to the documents plaintiff filed on August 8 besides the declaration of Lester

26   Dearwester, it appears to the court that defendant is correct – these documents are identical to

27   those filed by plaintiff on April 11, 2016 as one large document which was docketed with the title

28   "Plaintiff's Opposition to Defendant's Motion for Summary Judgment, or Summary

1  Adjudication." (Compare ECF Nos. 65, 67, 68, 69, 70, and 71 with ECF Nos. 56 and 56-1.)

2  Accordingly, because they are redundant, and therefore unnecessary to plaintiff's opposition, and

3  to clarify the docket in this matter, those documents (ECF Nos. 65, 67, 68, 69, 70, 71) will be

4  stricken.

5      The remaining document filed August 8 is the declaration of Lester Dearwester. (ECF

6  No. 66.) Therein, Lester Dearwester states that "[t]oward the end of February 2013, [he] received

7  a rejected article of mail that [he] had sent to plaintiff. This envelope was stamped in red ink with

8  the words, 'POSTCARDS ONLY EFFECTIVE MARCH 10, 2013' and nothing else." (Id.)

9  Lester Dearwester's declaration is dated June 24, 2016. At the time he filed the declaration in

10  August, plaintiff did not move to add this declaration to his opposition to the summary judgment

11  motion nor did he explain why his submission of the declaration was made almost four months

12  after he filed his opposition. Plaintiff again had the opportunity to explain the delayed filing of

13  Lester Dearwester's declaration in an opposition to defendant's August 15, 2016 motion to strike.

14  To date, plaintiff has filed no response to that motion.

15      Defendant states that it was prejudiced by the late-filed declaration because the

16  declaration was filed after the discovery deadline had passed so defendant could not "explor[e]

17  the veracity of the statements made in the declaration." (ECF No. 73 at 4.) The court notes that

18  the discovery deadline expired on December 11, 2015, before the deadline for filing pretrial

19  motions on March 4, 2016. (See Aug. 25, 2015 Disc. and Sch. Order (ECF No. 36) at 5.)

20  Defendant filed his motion for summary judgment on March 4, 2016. Therefore, even if plaintiff

21  had filed Lester Dearwester's declaration with a timely opposition, it would still have been filed

22  beyond the discovery deadline. Defendant does not allege that plaintiff failed to respond

23  appropriately to any discovery requests that would have uncovered the identity of Lester

24  Dearwester or the information contained in his declaration. The court finds that defendant's

25  statement that he is prejudiced because he was unable to conduct discovery regarding Lester

26  Dearwester does not add up.

27      The undersigned also notes that on December 10, 2015, defendant filed a motion to

28  compel plaintiff to respond to interrogatories and to a request for production of documents. (ECF

1    No. 39.)  On April 6, 2016, the previously-assigned magistrate judge granted defendant's motion

2    to compel and ordered plaintiff to respond to that discovery within thirty days.  (ECF No. 55.)

3    Therefore, discovery continued through May 2016.  Defendant could have requested further

4    discovery based on plaintiff's revelation in his April 11, 2016 opposition that multiple

5    declarations of friends and family members, including Lester Dearwester, were "pending."  (See

6    Pl.'s Index of Exs. at 2 (ECF No. 56 at 34).)  Defendant also had an opportunity to request further

7    discovery after plaintiff filed the opposition documents in August.

8            The undersigned finds that in the interests of fairly resolving defendant's motion for

9    summary judgment, and based on the fact defendant has suffered no demonstrable prejudice as a

10   result of the late-filed declaration of Lester Dearwester, the undersigned will recommend

11   defendant's motion to strike the June 24, 2016 Declaration of Lester Dearwester be denied.  See

12   Lighton v. Univ. of Utah, 209 F.3d 1213, 1227 (10th Cir. 2000) (court has discretion to permit

13   supplemental affidavits it finds useful for summary judgment determination); cf. Jones v. Blanas,

14   393 F.3d 918, 935 (9th Cir. 2004) (evidence submitted by pro se plaintiff in his objections to

15   magistrate judge's findings and recommendations should be considered).  In analyzing

16   defendant's motion for summary judgment below, the court will consider Lester Dearwester's

17   declaration, defendant's objections thereto, and defendant's additional argument in support of his

18   summary judgment motion which is contained in his August 15 motion to strike.

19                          **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

20           Defendant moves for summary judgment on two grounds.  First, he argues that plaintiff

21   lacks standing because he has failed to show he suffered an injury as a result of the postcard-only

22   policy.  According to defendant, that policy was never implemented so plaintiff suffered no ill

23   effects from it.  Defendant presents evidence to show that inmates were notified that the policy

24   would go into effect, but that the Jail never, in fact, rejected incoming mail based on the policy

25   and on June 5, 2013, the policy was rescinded.  Defendant's second argument is that even if the

26   policy was implemented, it was constitutional.

27   ////

28   ////

1    **I.      Legal Standards**

2         **A.  Summary Judgment Standards under Rule 56**

3         Summary judgment is appropriate when the moving party "shows that there is no genuine

4    dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

5    Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

6    proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litigation, 627

7    F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

8    moving party may accomplish this by "citing to particular parts of materials in the record,

9    including depositions, documents, electronically stored information, affidavits or declarations,

10   stipulations (including those made for purposes of the motion only), admissions, interrogatory

11   answers, or other materials" or by showing that such materials "do not establish the absence or

12   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

13   support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

14        When the non-moving party bears the burden of proof at trial, "the moving party need

15   only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

16   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.).  See also Fed. R. Civ. P. 56(c)(1)(B).

17   Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

18   against a party who fails to make a showing sufficient to establish the existence of an element

19   essential to that party's case, and on which that party will bear the burden of proof at trial.  See

20   Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

21   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

22   circumstance, summary judgment should be granted, "so long as whatever is before the district

23   court demonstrates that the standard for entry of summary judgment . . . is satisfied."  Id. at 323.

24        If the moving party meets its initial responsibility, the burden then shifts to the opposing

25   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

26   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

27   existence of this factual dispute, the opposing party typically may not rely upon the allegations or

28   denials of its pleadings but is required to tender evidence of specific facts in the form of

1   affidavits, and/or admissible discovery material, in support of its contention that the dispute

2   exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must

3   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

4   suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

5   T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and

6   that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

7   for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.

8   1987).

9        In the endeavor to establish the existence of a factual dispute, the opposing party need not

10  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

11  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

12  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

13  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

14  Matsushita, 475 U.S. at 587 (citations omitted).

15       "In evaluating the evidence to determine whether there is a genuine issue of fact," the

16  court draws "all reasonable inferences supported by the evidence in favor of the non-moving

17  party."  Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011).  It is the

18  opposing party's obligation to produce a factual predicate from which the inference may be

19  drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

20  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

21  party "must do more than simply show that there is some metaphysical doubt as to the material

22  facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

23  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

24  omitted).

25  ////

26  ////

27  ////

28  ////

**B.   Other Applicable Legal Standards**

**1.   Civil Rights Act Pursuant to 42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

**2.   Legal Standards Applicable to First Amendment Claims re Right to Mail**

It is well established that prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995).  A jail or prison may restrict an inmate's right to receive mail but only if the regulations are "reasonably related" to legitimate penological interests.  See Beard v. Banks, 548 U.S. 521, 528 (2006); Turner v. Safley, 482 U.S. 78, 89–91 (1987); Witherow, 52 F.3d at 265.

**3.   Legal Standards for "Injury in Fact" Requirement of Standing**

The Constitution limits federal judicial power to designated "cases" and "controversies."  U.S. Const. art. II, § 2.  Thus, federal courts do not have the power to decide questions of law in a vacuum.  Standing is "an essential and unchanging part of the case or controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  To establish "a case or controversy" within the meaning of Article III, plaintiff must show three things.  First, he must show that he suffered an "injury in fact" by establishing that he suffered an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. (internal citations and quotations omitted).  Second, he must

10

1   show causation, a causal connection between the injury and the defendant's conduct or omissions.

2   Id. Third, he must show redressability, a likelihood that the injury will be redressed by a favorable

3   decision.  Id.; see also Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc., 528 U.S.

4   167, 180-81 (2000).

5          **II.      Analysis**

6          The parties do not dispute the following facts.[3]  Plaintiff was an inmate at the Jail from May

7   5, 2011 until his release on July 30, 2013.  (DSUF #2.)  In January 2012, the Sheriff's Department

8   drafted a "strategic objective" which proposed restricting incoming inmate mail to allow only

9   postcards.[4]  (DSUF #3.)   The Sheriff's Department planned to implement this new inmate

10  correspondence policy to improve facility safety and security by limiting the ability to introduce

11  contraband into the facility through the mail.  (DSUF #4.)   The policy expressly stated that

12  money orders, cashier's checks, photographs, legal mail, correspondence from government and

13  business entities, and email would not be affected by the policy.  (DSUF #22.)

14         At the time the policy was drafted, the Jail processed more than 1,200 pieces of incoming

15  mail each week on average.  (DSUF #18.)

16         During some period of the implementation process, the Jail stamped incoming inmate

17  personal mail with the words "POSTCARDS ONLY EFFECTIVE MARCH 10, 2013."  (DSUF

18  #8.)

19         The American Civil Liberties Union ("ACLU") sent a letter dated February 15, 2015 to the

20  Sheriff's Department objecting to the proposed postcard-only policy.  (DSUF #10.)  On February

21  22, 2013, plaintiff filed a grievance regarding the postcard-only policy.  (DSUF #9.)   In his

22  grievance, plaintiff stated that he had not received notification of the postcard-only policy until he

23

24  _____

    [3] These facts are gleaned from defendant's Statement of Undisputed Facts ("DSUF") (ECF No.
25  52-4) and plaintiff's Statement of Disputed and Undisputed Facts in Opposition to Motion for
    Summary Judgment or Summary Adjudication ("PSD&UF") (ECF No. 56 at 22-27).

26
    [4] Defendant describes the policy as permitting only "metered" postcards and plaintiff does not
27  dispute that fact.  (DSUF #3; PSD&UF #3.)  However, the copy of the Notice provided by
    plaintiff shows that stamped postcards would be permitted, but the stamps would be removed
28  before the postcard was delivered to the inmate.  (Compl. (ECF No. 1 at 6).)

1   received an item of personal mail with the postcard-only stamp and that the postcard-only policy

2   violated, inter alia, his First Amendment rights. (Compl. (ECF No. 1 at 7-12).)  Plaintiff asked

3   that the postcard-only policy be rescinded. (Id. at 12.)  Plaintiff's grievance was denied at each

4   level. (Id. at 12-15.)  In the response to his second level appeal, on March 4, 2013, Lt. P. Massa

5   informed plaintiff that the policy would be implemented when the grace period ended on March

6   10, 2013 and concluded that the "policy has been reviewed and stands as implemented." (Id. at

7   14.)  Plaintiff's third level appeal was denied on March 7, 2013 with the statement that the

8   "policy will not be rescinded." (Id. at 15.)

9       The Jail also had a Mail Rejection Notification policy in effect during 2013.  Pursuant to that

10  policy, inmates would be provided notice if any of their incoming mail was rejected and returned

11  to the sender. (DSUF #16.)  Plaintiff never received one of these notifications during the period

12  of his incarceration at the Jail. (DSUF #17.)

13      The remaining facts are in dispute and are addressed below in the analyses of the issues raised

14  by defendant's motion.  Both parties object to some of the evidence submitted.  The court

15  addresses potentially valid objections below in the discussion of the evidence.

16      **A.  Standing**

17      Defendant's primary argument is that plaintiff lacks standing to assert a First Amendment

18  claim because he was not affected by the postcard-only policy.  According to defendant, plaintiff

19  cannot show that he failed to receive any incoming mail as a result of the policy.

20      **1.  Disputed Facts**

21      The parties have numerous factual disputes related to the issue of standing.  First, plaintiff

22  disputes defendant's contention that all Jail inmates received notice of the policy sixty days prior

23  to its implementation.  Second, plaintiff disputes defendant's contention that the Jail had a thirty-

24  day "grace period" during which incoming inmate mail was stamped with the words

25  "POSTCARDS ONLY EFFECTIVE MARCH 10, 1983."  Third, plaintiff disputes defendant's

26  contention that the policy was never implemented and no incoming inmate mail was ever

27  returned.  Finally, plaintiff disputes defendant's contention that his lack of personal mail was not

28  due to the postcard-only policy.

12

1

#### a. Notice of Postcard-only Policy

2    Defendant contends that the Sheriff's Department "provided sixty days notice to inmates and

3    the public of the proposed revised mail policy." (DSUF #5.) According to the March 2, 2016

4    Declaration of Sergeant Reid Harris ("Harris Decl."), he took the following actions to notify

5    "stakeholders"[5] of the policy: (1) he updated the Main Jail and Rio Consumnes Correctional

6    Center websites to reflect the new postcard-only policy; (2) he authored a press release regarding

7    the proposed change in mail policy; (3) he authored a notice form regarding the revised mail

8    policy and posted the form at the Jail's front counter and in all inmate housing units. (Ex. C to

9    DSUF, Harris Decl. ¶¶ 9-12 (ECF No. 52-4 at 47).) Sergeant Reid states that sixty days notice

10   was provided to these stakeholders. (Id. ¶9.) However, he does not specifically state when he

11   took each of these actions or when, or whether, the press release that he authored was issued.

12   Plaintiff states that he received no advance notification of the policy prior to receiving

13   incoming mail with the stamp "POSTCARDS ONLY EFFECTIVE MARCH 10, 2013" on

14   February 22, 2013. (PSD&UF #5 (ECF No. 56 at 23).) According to plaintiff, the Notice was

15   not posted in his area of the Jail. (Compl. (ECF No. 1 at 7).) Plaintiff states that he obtained a

16   copy of the Notice by requesting one from the library. (Id.)

17   Plaintiff cites to a good deal of evidence in support of his claim of lack of notice, including

18   his complaint, his grievance filed with the Jail, the reply to that grievance by Lt. P. Massa, and

19   numerous declarations. None of the declarations, besides plaintiff's own, are included with his

20   opposition. In his declaration, plaintiff states that this stamped notification on his incoming mail

21   "was the first and only notification that I received regarding this new policy." (Ex. B to Pl.'s

22   Oppo., Mar. 24, 2016 Decl. of F. Dearwester ("F. Dearwester Decl."), ¶ 4 (ECF No. 56 at 52).)

23   Plaintiff provides a copy of what appears to be an envelope with a return address of "Les

24   Dearwester, P.O. Box 1895, Gold Beach, OR 97444" and an address of "Dearwester, SCMV 651

25   ////

26

27   _____

[5] The court agrees with plaintiff that the term "stakeholders" is vague. (See Pl.'s Oppo. (ECF No. 56 at 31).) The term's vagueness is part of this court's consideration of whether defendant has

28   established that absence of a genuine issue of material fact.

1   I St., 95814."  Handwritten on this copy are "102" and "8E 102."  In addition, the copy shows a

2   stamp stating "POSTCARDS ONLY, EFFECTIVE, MARCH 10, 2013."  (ECF No. 56-2 at 2.)

3        Defendant objects to plaintiff's declaration because it is unsigned.  (See F. Dearwester Decl.

4   at 6 (ECF No. 56 at 57).)   The court construes pro se filings liberally.  Haines v. Kerner, 404 U.S.

5   519, 520 (1972); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Here, plaintiff's

6   declaration was filed as an attachment to plaintiff's opposition papers, some of which were signed

7   by plaintiff under penalty of perjury.  (See ECF No. 56 at 2, 20.)  This is not a situation in which

8   plaintiff attempts to rely on the unsigned declaration of a third party.  Therefore, if this matter was

9   to go to trial, plaintiff could testify to the matters in his declaration, curing the defect.  For these

10   reasons, the court will accept plaintiff's declaration for purposes of this summary judgment

11   motion.  See Fraser v. Goodale, 342 F. 3d 1032, 1036 (9th Cir. 2003) (even if form of the

12   evidence is objectionable, court should consider a pro se party's evidence if the substance could

13   be made use of at trial; evidence does not have to be admissible per se to be considered on

14   summary judgment); Burch v. Regents of the Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D.

15   Cal. 2006) (on summary judgment, the non-moving party's evidence need not be in a form that is

16   admissible at trial) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)); but see Orr v.

17   Bank of America, 285 F.3d 764, 773 (9th Cir. 2002) (unauthenticated documents submitted by

18   plaintiff who was represented by counsel cannot be considered in opposition to a motion for

19   summary judgment).

20        The court also notes that in his complaint, plaintiff made a similar statement that he did not

21   receive notice of the postcard-only policy.  (ECF No. 1 at 7-8.)  A complaint that is submitted in

22   substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and

23   may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal

24   knowledge and contain specific facts admissible into evidence.  See Jones v. Blanas, 393 F.3d

25   918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the

26   verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal

27   knowledge by citing two specific instances where correctional staff members . . . made statements

28   from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d

14

1   196, 197–98 (9th Cir. 1987); <u>see also</u> <u>El Bey v. Roop</u>, 530 F.3d 407, 414 (6th Cir. 2008) (Court

2   reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact

3   that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746.  His

4   verified complaint therefore carries the same weight as would an affidavit for the purposes of

5   summary judgment.").

6        In plaintiff's complaint, his signature follows the statement, "I declare under penalty of

7   perjury that the foregoing is true and correct."  (ECF No. 1 at 3.)  It therefore qualifies as a

8   verified complaint under 28 U.S.C. § 1746 and, to the extent it alleges specific facts from

9   plaintiff's personal knowledge, it carries the same weight as an affidavit proffered to oppose

10  summary judgment.  <u>See</u> <u>Keenan v. Hall</u>, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996), <u>amended</u>, 135

11  F.3d 1318 (9th Cir. 1998) (mem.).

12                              **b.  Grace Period**

13       Defendant asserts that the Sheriff's Department instituted a month-long "grace period"

14  starting February 10, 2013.  (DSUF #6; Harris Decl. ¶¶ 9, 13 (ECF No. 52-4 at 47-48).)  During

15  that period, mail would not be restricted but incoming inmate mail would be stamped with the

16  words "POSTCARDS ONLY EFFECTIVE MARCH 10, 2013."  (DSUF ## 7, 8; Harris Decl. ¶¶

17  13, 14; Declaration of M. Petersen ("Petersen Decl.") ¶ 11(ECF No. 52-4 at 21-22).)   Defendant

18  presents the declarations of two sheriff's department officers, Sergeant Harris and Lieutenant

19  Petersen, regarding the postcard-only policy.  The court notes that Sgt. Harris was personally

20  involved only in the notice of the postcard-only policy because, according to his declaration, he

21  was transferred out of the Jail on February 9, 2013, one day before the "grace period" began.

22  (<u>See</u> Harris Decl. ¶¶ 3, 15.)  At all relevant times, Lt. Petersen was the Assistant to the Chief

23  Deputy of Correctional Services for the Sacramento County Sheriff's Department.  (Petersen

24  Decl. ¶ 3.)

25       According to Lt. Petersen, the Sheriff's Department received a letter dated February 15,

26  2013 from the ACLU regarding the postcard-only policy.[6]  (<u>Id.</u> ¶ 4.)  Following receipt of that

27

28  _____
    [6] Plaintiff repeatedly contends that defendant should have provided plaintiff a copy of the ACLU
    letter during discovery.  Defendant had no obligation to do so absent a relevant discovery request.

1   letter, and before expiration of the "grace period," the Sheriff's Department "placed

2   implementation of the Postcard-Only policy on hold to review the policy." (Id. ¶ 5.)  Lt. Petersen

3   states that the only effect on incoming inmate mail during the grace period was that it was

4   stamped "Postcards only effective March 10, 2013." (Id. ¶ 11.)

5          Plaintiff disputes the assertion that mail was not affected during the grace period.  Lester

6   Dearwester's declaration is plaintiff's best evidence in support of his position.  In his declaration,

7   Lester Dearwester states that "[t]oward the end of February 2013, [he] received a rejected article

8   of mail that [he] had sent to plaintiff.  This envelope was stamped in red ink with the words,

9   'POSTCARDS ONLY EFFECTIVE MARCH 10, 2013' and nothing else." (ECF No. 66.)

10  Lester Dearwester's statements create a question of fact about whether mail sent to plaintiff at the

11  Jail during the "grace period" was returned to the sender based on the postcard-only policy.[7]

12         Defendant objects to various parts of Lester Dearwester's declaration.  Two objections are

13  relevant here to the factual issue of whether mail was returned to plaintiff's family members

14  during the "grace period."  First, defendant contends the declaration fails to lay the proper

15  foundation by showing when the mail was sent, to whom it was sent, or whether it was properly

16  addressed.  (Def.'s Objs. to Decl. of L. Dearwester (ECF No. 73-1) at 2.)

17         Defendant's objection is not well-taken.  Lester Dearwester states that he received an item

18  of mail that he had sent to plaintiff toward the end of February 2013.  The envelope had a stamp

19  in red ink with the words "POSTCARDS ONLY EFFECTIVE MARCH 10, 2013."  Lester

20  Dearwester does, in fact, have personal knowledge of having mailed a letter to plaintiff, having

21  that letter returned, and seeing a stamp on the letter regarding the postcards-only policy.

22

23  Plaintiff does not argue that defendant should have provided the ACLU letter in response to a
    specific discovery request.  Further, plaintiff asks the court to order plaintiff to serve a copy of his
24  opposition to the summary judgment motion on the ACLU.  (See Pl.'s Oppo. (ECF No. 56 at
    20).)  The ACLU is not a party to this action and need not be served.  If plaintiff wishes to
25  provide the ACLU with information, he may do so without court involvement.

26  [7] Plaintiff also contends other friends and family members received returned mail during this time
27  period.  However, plaintiff does not have personal knowledge of that fact and presents no
    declarations besides that of Lester Dearwester.  Therefore, the court will not consider these
28  contentions as evidence in support of plaintiff's opposition to the summary judgment motion.

1   Defendant also contends Lester Dearwester does not have personal knowledge of the

2   reason for the return of the letter.  However, nowhere in Lester Dearwester's declaration does he

3   state a reason.  He simply states that he received the returned mail with the stamp.  Defendant's

4   first objection to Lester Dearwester's declaration is overruled.

5   Defendant next objects that Lester Dearwester's statement is hearsay because he does not

6   provide a copy of the envelope with his declaration.  (Id. at 3.)  Defendant cites no authority for

7   this objection.  Lester Dearwester's declaration states what he personally saw.  While a copy of

8   the envelope would certainly be better evidence, that does not mean Lester Dearwester's personal

9   knowledge of the fact mail was returned to him with the postcards-only stamp is objectionable as

10  hearsay.  Defendant's second objection is overruled as well.

11  The other viable evidence presented by plaintiff to challenge defendant's contention that

12  the postcard-only policy was subject to a grace period is the Notice that was apparently posted by

13  defendant in the jail.  (Compl. (ECF No. 1 at 6).)   The Notice is titled "NOTICE REVISED

14  MAIL POLICY."  It starts with the following:

15
16  > Effective February 10, 2013 all incoming inmate mail, with the
    > exception of legal mail and other approved correspondence listed
    > below, will be limited to postcards.  Incoming mail which is not in
17  > postcard form or otherwise approved will be returned to the sender.
    > This change is being implemented to ensure the safety and security
18  > of jail facilities, inmates and staff.

19  The Notice then listed the following categories:

20  - "Acceptable Postcards" which included a minimum and maximum size limitation

21    and permitted the postcards to be stamped, but stated that stamps would be

22    removed prior to delivery to the inmate

23  - "Unacceptable Postcards" which stated, among other things, that homemade cards

      and cards marked with paint, crayons, or markers were not permitted
24
25  - "Legal Mail" which stated that legal mail would not be affected

26  - "Money" which clarified that money orders and cashier's checks were permissible

      but cash was not
27
28  - "Photographs" which specified the number, size, and type of photos permitted

17

- "Other Approved Mail" which specified that "[o]fficial correspondence from government agencies and business entities" was allowed and noted that inmates could receive e-mail messages

- "Books, Newspapers, and Magazines" which stated that subscriptions to these items would not be affected by the new policy

The Notice did not provide any information about a grace period. It simply stated that the policy was effective on February 10, 2013.

### c.   Returned Mail

According to defendant, the "grace period" was "never lifted" by the Sheriff's Department and no incoming inmate mail was ever returned based on the postcard-only policy. (DSUF ## 12, 13; Petersen Decl. ¶ 11 (ECF No. 52-4 at 22).)  Again, plaintiff's declaration of Lester Dearwester creates a disputed fact in this regard.  Plaintiff has submitted sufficient evidence for a jury to find that at least one piece of mail intended for plaintiff was returned to the sender with a stamp informing the sender that only postcards would be accepted starting March 10, 2013.

The court does find that the fact Lester Dearwester received returned mail in late February with the postcards-only policy stamp does not necessarily mean the postcards-only policy was the basis for the return of that mail.  It is unclear why Lester Dearwester's mail was returned.  It is certainly possible that the mail was rejected for another reason and the Jail was simply informing Lester Dearwester about the new postcards-only policy.  The basis for the return of the letter is not clear from the facts presented by either party.  Submission of Lester Dearwester's declaration creates a dispute of fact about why the mail was returned.

The court also notes that the reason for the return of Lester Dearwester's mail may not be the sole crux of defendant's standing argument.  The returned mail gave Lester Dearwester notice of the new policy and its March 10, 2013 effective date.  Defendant has not shown that it provided anyone any notice until June 5, 2013 that the policy had been rescinded.  (See DSUF #12; Petersen Decl. ¶¶ 9, 10; Exs. C and D to Petersen Decl. (ECF No. 52-4 at 22, 32-44).)  Therefore, from the time Lester Dearwester and plaintiff received notice of the policy, in late February, until June 5, when the revised policy was posted, both had every reason to think Lester Dearwester

18

could only communicate with plaintiff by postcard.  This is particularly true because as late as March 7, the prison informed plaintiff, when it rejected the final appeal of his grievance, that the "policy will not be rescinded."  (Compl. (ECF No. 1 at 15).)

    While plaintiff does not dispute the fact that he never received a Mail Rejection Notification that any of his incoming mail had been rejected, he does dispute whether that notification policy was consistently implemented.  The court agrees that the evidence presented by defendant is insufficient to show consistent implementation of the Mail Rejection Notification policy.  Defendant presents the declaration of Lt. Petersen, the Assistant to the Chief Deputy of Correctional Services for the Sheriff's Department, who asserts that "[n]o incoming inmate correspondence was affected as a result of the proposed Postcard-Only policy."  (Petersen Decl. ¶ 11.)  However, defendant has not shown that Lt. Petersen had direct personal knowledge of the processing of every piece of mail by the Jail.[8]  The fact that a policy was in place is certainly evidence that may be considered by a jury, but it is not dispositive of the issue of whether any of plaintiff's mail was returned based on the postcard-only policy.

### d.   Plaintiff's Lack of Personal Mail

    Plaintiff contends he received no personal mail for three months after receiving notice of the postcards-only policy.  (DSUF # 15.)  Defendant does not contest that fact.  However, defendant argues that plaintiff presents no direct evidence that the absence of personal mail was due to the postcard-only policy.  Again, the declaration of Lester Dearwester provides the evidence plaintiff needs to create a material issue of fact.

---

[8] Plaintiff points out this fact in his objections to Lt. Petersen's declaration.  (See ECF No. 56 at 28-30.)   In its opposition to plaintiff's objections to Lt. Petersen's declaration, defendant argues that the actions of mailroom staff are not relevant because this case is only about the Jail's policy.  (See ECF No. 57-3 at 2-3.)  That is not the case.  Defendant made the actions of the mailroom staff relevant by arguing that no mail was returned based on the postcard-only policy and that plaintiff never received a Mail Rejection Notice.  These are certainly factual determinations.  Lt. Petersen's declaration addresses the first factual point when he states, "[n]o incoming inmate correspondence was affected as a result of the proposed Postcard-Only policy, with the exception of the incoming mail being stamped, 'Postcards only effective March 10, 2013.'"  This is not simply a statement of policy.  Taken on its face, Lt. Petersen's statement is that, in fact, no correspondence was affected by the policy, i.e., no correspondence was rejected and returned by mailroom staff based on the policy.

1   Lester Dearwester states that he did not send plaintiff any mail after receiving notification

2   of the postcard-only policy because:

3   • He was "not in a position financially to attempt to have any kind of meaningful

4     relationship on such a small writing area."  (L. Dearwester Decl. ¶ 3.)

5   • The cost of postcards and postage deterred him from continuing to communicate

6     with plaintiff.  (Id. ¶ 4.)

7   • If he had known about the policy beforehand, he could have prepared by

8     purchasing postcards and postage in advance.  (Id. ¶ 7.)

9   • He was not comfortable corresponding on a postcard because Jail staff and other

10    inmates could see what he had written.  (Id. ¶ 8.)

11  • He was "effectively barred from corresponding with plaintiff from late February

12    2013 until after early August 2013" when plaintiff was released from the Jail.  (Id.

13    ¶ 9.)

14  Defendant objects to all of this evidence on various grounds.  None of the grounds justify

15  rejecting Lester Dearwester's evidence at this point.  The relevance of this evidence is to show

16  why Lester Dearwester did not continue to communicate with plaintiff after receiving notification

17  of the postcards-only policy.  The fact that his reasons may be based on faulty factual

18  assumptions about prison policy or otherwise is a basis for cross-examination but not a reason to

19  reject Lester Dearwester's statements at this point in the proceedings.  The Ninth Circuit has held

20  that as long as the evidence put forth by a pro se plaintiff "could" be made use of at trial, it does

21  not have to be admissible per se to be considered on summary judgment.  Fraser v. Goodale, 342

22  F.3d 1032, 1036-37 (9th Cir. 2003).  Further, courts consider the opposing party's papers more

23  leniently than those submitted by the moving party.  Lew v. Kona Hosp., 754 F.2d 1420, 1423

24  (9th Cir. 1985); Scharf v. U.S. Atty. Gen., 597 F.2d 1240, 1243 (9th Cir. 1979).

25  This makes sense.  Success by the moving party would result in a judgment in favor of

26  that party.  And, while avoiding unnecessary trials is important, success by the non-moving party

27  only permits the further development of evidence.  See Burch v. Regents of Univ. of Cal., 433 F.

28  Supp. 2d 1110, 1121 (E.D. Cal. 2006) (The party opposing summary judgment "is not attempting

20

1  to prove its case, but instead seeks only to demonstrate that a question of fact remains for trial.")

2  Finally, as noted by another judge of this court, many objections raised by defendant are

3  subsumed within the summary judgment standard.  "For example, objections to evidence on the

4  ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper

5  legal conclusion are all duplicative of the summary judgment standard itself; yet attorneys insist

6  on using evidentiary objections as a vehicle for raising this point. A court can award summary

7  judgment only when there is no genuine dispute of material fact.  It cannot rely on irrelevant

8  facts, and thus relevance objections are redundant."  Id. at 1119.

9          **2.   Has Plaintiff Established a Genuine Issue of Material Fact re Standing?**

10         Defendant's standing argument is premised on the assertion that none of plaintiff's mail was

11 returned based on the postcard-only policy.  Plaintiff challenges that assertion by presenting

12 evidence showing that Lester Dearwester sent him mail, that mail was returned with the stamped

13 notification about the postcard-only policy, and based on that policy Lester Dearwester did not

14 send plaintiff any other mail during the time plaintiff was incarcerated at the Jail.  A reasonable

15 jury could find in plaintiff's favor on the issue of whether plaintiff failed to receive mail from

16 Lester Dearwester based on the postcard-only policy.  Accordingly, plaintiff has shown an "injury

17 in fact" caused by a policy created by defendant.   Summary judgment for the defendant on the

18 issue of standing is not appropriate.

19         **B.   Constitutionality of Postcard-only Policy**

20         It is well established that prisoners have "a First Amendment right to send and receive mail."

21 Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995).  A jail or prison may restrict an inmate's right

22 to receive publications and other mail but only if the regulations are "reasonably related" to

23 legitimate penological interests.  See Beard v. Banks, 548 U.S. 521, 528 (2006); Turner v. Safley,

24 482 U.S. 78, 89–91 (1987); Witherow, 52 F.3d at 265.  Deterring criminal activity and

25 maintaining prison security are legitimate penological interests that justify regulations on prisoner

26 mail.  O'Keefe v. Van Boening, 82 F.3d 322, 326 (9th Cir. 1996).

27         Under Turner, there are four factors to consider when determining the reasonableness of a

28 prison regulation.

(1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there exists an obvious, easy alternative to the regulation "that fully accommodates the prisoner's rights at de minimis cost to valid penological interests."

O'Keefe, 82 F.3d at 325 (quoting Turner, 482 U.S. at 89-91).

The standard for reviewing a prison regulation is deferential. Courts must give "'substantial deference to the professional judgment of prison administrators.'" Beard, 548 U.S. at 528 (quoting Overton v. Bazzetta, 539 U.S. 126, 132 (2003)). A court does not have to agree with the officials' proffered "legitimate penological interest." Frost v. Symington, 197 F.3d 348, 355 (9th Cir. 1999). The inquiry under Turner is not whether the policy actually serves a penological interest, but rather whether it was rational for jail officials to believe that it would. Mauro v. Arpaio, 188 F.3d 1054, 1060 (9th Cir. 1999). That said, the Turner standard is not "toothless." Thornburgh v. Abbott, 490 U.S. 401, 414 (1989). "Turner requires prison authorities to show more than a formalistic logical connection between a regulation and a penological objective." Beard, 548 U.S. at 535.

To meet the first Turner factor, defendant must show the postcard-only policy's objectives are legitimate and neutral, and that they rationally relate to the policy itself. Ashker v. Cal. Dep't of Corrs., 350 F.3d 917, 922 (9th Cir. 2003) (citing Morrison v. Hall, 261 F.3d 896, 901 (9th Cir. 2001)). In the present case, defendant describes two objectives for the postcard-only policy: (1) to ensure the safety and security of inmates and staff by making it easier for jail staff to detect contraband; and (2) to more efficiently deal with the high volume of incoming prisoner mail. After discussing each of these objectives below, this court concludes that defendant fails to establish that there is no genuine issue of material fact regarding the first Turner factor and summary judgment is not appropriate on the issue of the constitutionality of the postcard-only policy. See id. (if prison officials fail to show the regulation is rationally related to a legitimate penological goal, the court need not reach the remaining factors).

////

1

### 1.  Objectives of Policy

2

#### a.  Reducing  Contraband

3      Defendant contends the postcard-only policy was intended to "substantially limit the ability to

4   introduce contraband into the facility through the mail."  (DSUF #19.)  Defendant relies on the

5   declaration of Sgt. Harris for his statement.  Sgt. Harris stated that one goal of the postcard-only

6   policy "was to reduce the amount of contraband introduced into . . . the Sacramento County Main

7   Jail."  (Harris Decl. ¶ 7.)   According to Sgt. Harris, at the time the policy was proposed,

8   "contraband introduced to the facility through incoming mail included:  narcotics, tobacco,

9   matches, a utility blade, pornographic photographs, staples, gang related materials, and other

10   unacceptable items."  (Id. ¶ 8.)  Sgt. Harris refers to a January 2012 "Strategic Planning"

11   document with the title "Problem Solving Initiative:  Incoming Inmate Mail."  (Ex. A to Harris

12   Decl. (ECF No. 52-4 at 50).)   That document also lists stationary, stamps, paperclips, and third

13   party mail as contraband that had been found in incoming inmate mail.  It explains that the

14   "contraband has been hidden in the envelopes and letters, inside greeting cards, and behind

15   stamps."  The goal of limiting mail to "metered post cards" was to "substantially" reduce the

16   means by which contraband could be introduced.  The court notes that this "Strategic Planning"

17   document, while a reflection of Jail policy, does not amount to sworn testimony regarding the

18   type of contraband found or the way in which the contraband was hidden in mail.

19      Plaintiff does not dispute that reducing contraband was a goal, but argues that the

20   postcard-only policy was not effective in, or rationally related to, achieving that goal.  (PSD&UF

21   #4 (ECF No. 56 at 23).)

22      A number of district courts have examined similar postcard-only policies with varied

23   results.  It does not appear that the Ninth Circuit Court of Appeals has considered the issue.

24   Several district courts found the policies constitutional.  Others held the policies violated the First

25   Amendment, or that their constitutionality could not be determined on summary judgment,

26   because defendants failed to show the postcard-only policies were rationally related to the goal of

27   reducing contraband.  See Simpson v. County of Cape Girardeau, ___ F. Supp. 3d ___, 2016 WL

28   4368054 (E.D. Mo. Aug. 16, 2016) (after bench trial, judgment for defendants because postcard-

1   only policy reasonably related to a legitimate penological interest); Barnes v. Wilson, 110 F.

2   Supp. 3d 624, 632 (D. Md. 2015) (on summary judgment, court upheld postcard-only policy that

3   did not apply to legal communications or prevent all avenues of communication, where inmate's

4   stay in facility was "transitional and temporary"); Prison Legal News v. Chapman, 44 F. Supp. 3d

5   1289, 1299 (M.D. Ga. 2014) (after bench trial, court held that postcard-only policy was

6   constitutional); Covell v. Arpaio, 662 F. Supp. 2d 1146, 1153–55 (D. Ariz. 2009) (on summary

7   judgment, court found metered-postcard-only policy rationally related to legitimate interest in

8   reducing contraband where evidence showed previous increase in attempted smuggling of

9   contraband through the back of postage stamps); and Althouse v. Palm Beach Cty. Sheriff's

10  Office, No. 12–80135–CIV, 2013 WL 536072, at *5–6 (S.D. Fla. Feb. 12, 2013) (on summary

11  judgment, court found postcard-only policy was rationally connected to security where evidence

12  showed that envelopes and greeting cards frequently contained hidden contraband) with Kirk v.

13  Carson County, No. 3:13-cv-0490 MMD VPC, 2016 WL 1572665, at *3-5 (D. Nev. Mar. 22,

14  2016) (magistrate judge recommends denial of summary judgment because defendant presented

15  insufficient evidence connecting the objectives of the postcard-only policy and the policy),

16  adopted, 2016 WL 1558366 (D. Nev. May 18, 2016); Harker v. Jordan, No. 1:14-cv-0005 AGF,

17  2016 WL 759302, at *5-7 (E.D. Mo. Feb. 26, 2016) (summary judgment not appropriate because

18  court finds issues of fact regarding relationship between reasons for postcard-only policy and

19  policy itself); Brown v. Hickman, No. 3:12-cv-3150, 2015 WL 1097392, at *9 (W.D. Ark. Mar.

20  11, 2015) (collecting cases; summary judgment not appropriate because "[t]he Court certainly

21  cannot, as urged by Defendants, find the Policy constitutional based on their bare assertion that it

22  served the needs of the detention center to cut down on contraband coming into the facility");

23  Cox v. Denning, No. 12-2571-DJW, 2014 WL 4843951, *14-23 (D. Kan. Sept. 29, 2014) (court

24  grants summary judgment for plaintiff on the grounds that postcard-only policy violates the First

25  Amendment), aff'd, 652 Fed. Appx. 687 (10th Cir. 2016).  Cf. Prison Legal News v. County of

26  Ventura, No. 14-0773-GHK (EX), 2014 WL 2736103 (C.D. Cal. June 16, 2014) (court grants

27  plaintiff publisher's request for preliminary injunction barring implementation of postcard-only

28  policy); Prison Legal News v. Columbia County, 942 F. Supp. 2d 1068, 1083 (D. Or. Apr. 24,

24

2013) (after bench trial in which court considered effect of postcard-only policy on plaintiff

publisher's First Amendment right to send magazines to inmates, court finds policy violates the

First Amendment and permanently enjoins defendants from restricting inmate mail to postcards).

Some courts' determinations directly conflict.  For example, in <u>Columbia County</u>, the court

noted that "[t]here is not an intuitive, common-sense connection between the postcard-only policy

and enhancing jail security."  942 F. Supp. 2d at 1083.  The court continued,

> When the postcard-only policy is compared to a policy of opening
> envelopes and inspecting their contents, the rational relationship
> between the postcard-only policy and enhancing security dissolves.
> Defendants did not at trial, and do not in their post-trial briefing,
> offer any explanation why a postcard-only policy is more effective
> at preventing the introduction of contraband than opening
> envelopes and inspecting their contents.

<u>Id.</u>  In <u>Simpson</u>, on the other hand, the court found an objectively rational connection between the

policy and reducing contraband:  "the postcard-only policy minimizes the possibility that

paperclips, rubber bands, staples, newspaper articles, and sentencing documents—all items which

defendants established pose a risk to security and safety—will be introduced into the jail in

envelopes."  2016 WL 4368054, at *5.

### b.  Improving Efficiency

Defendant claims the second objective of the postcard-only policy was "to improve

efficiency of Jail Staff by reducing the amount of time spent processing the mail for delivery."

(DSUF # 20; Harris Decl. ¶ 7; Ex. A to Harris Decl. (ECF No. 52-4 at 47, 50).)  Exhibit A to Sgt.

Harris's declaration is the Strategic Planning document entitled "Problem Solving Initiative:

Incoming Inmate Mail."  That document explains how incoming inmate mail is processed:

> Each piece is x-rayed for hazardous materials, and then sorted for
> review (packages, newspapers and magazines, and letter mail).
> Incoming mail is reviewed for rule violations and possible
> intelligence value, then opened and inspected for more contraband.
> The Main Jail mail officer estimates that it requires approximately
> 85 hours per week to process and deliver all incoming and outgoing
> mail.

(ECF No. 52-4 at 50.)  The document then opines about the efficiencies the postcard-only policy

would effect:

////

> Restricting incoming inmate mail, except legal mail, to metered post cards would improve efficiency by reducing the amount of staff time spent processing the mail for delivery.  Post cards would not require x-ray review for hazardous items.   Mail violating facility rules should be eliminated, ending the need to return rejected mail.  Staff time spent processing mail could be redirected to address other needs in the facility.

(Id.)

Plaintiff objects to these statements of the goals of the policy because they are "facts in dispute."[9]  (Pl.'s Objs. to Def.'s Index of Exs. #7 (ECF No. 56 at 31).)  Like many of plaintiff's objections, this statement is legal argument which will be considered here.

The court finds defendant's submission of this document problematic for a variety of reasons.  First, as discussed above, the document is not a sworn affidavit.  Therefore, while it may reflect Jail policy, its assertions of fact – such as the mail officer's estimate of the time required to process and deliver all incoming and outgoing mail – are not acceptable for their truth in support of a motion for summary judgment.  See Jones v. Williams, 791 F.3d 1023, 1032 (9th Cir. 2015) (unsworn statements presented for the truth of the matters stated are hearsay under Fed. R. Evid. 801(c) and may not be considered on summary judgment).  Second, even if the court could consider the factual statements made in the Strategic Planning document, the description of the mail processing system then in effect considered all mail, including legal mail and media, much of which would not be affected by the postcard-only policy.  Third, the Strategic Planning document's description of time savings assumed the policy would not permit stamped postcards.  The policy about which inmates were notified allowed stamped postcards but stated that stamps would be removed before the postcards were delivered to the inmates.  The Strategic Planning document does not account for the processing time this would take.

Again, courts' rulings regarding postcard-only policies supported by efficiency objectives are inconsistent.  In Columbia County, the court noted that there "is a common-sense connection between the postcard-only policy and promoting efficiency:  Postcards do not need to be opened

---

[9] Plaintiff also objects on the grounds that "opinion reserved for trier of fact" and cites "Evid. Code § 906."  There is no section 906 in the Federal Rules of Evidence.  It does not appear that there is a section 906 in the California Evidence Code either, but, in any event, the state rules of evidence would not be relevant here.

1    and they have no contents that need inspection (although their text may still need to be read for

2    security purposes)."  942 F. Supp. 2d at 1084.  However, evidence presented in that case refuted

3    this common-sense connection because inspecting a postcard took only a few seconds less time

4    than opening and inspecting a letter.  The court in <u>Columbia County</u> found that this "de minimis

5    savings in time achieved by the postcard-only policy is too small to create a rational connection

6    between the policy and promoting efficiency at the Jail."  <u>Id.</u>  In <u>Simpson</u>, however, the court

7    simply accepted, for purposes of summary judgment that "logic dictates that scanning postcards is

8    more efficient than opening envelopes and scanning multipage letters for information regarding

9    other inmates or escape plans."  2016 WL 4368054, at *5.

10                        **2.    Genuine Issues of Material Fact re First <u>Turner</u> Factor**

11        This court finds the record inadequate to support summary judgment in defendant's favor.

12   The only sworn statement presented to show why the postcard-only policy would reduce

13   contraband is Sgt. Harris's simple description of the types of contraband that had been found in

14   mail.  Defendant presents no statements from those with personal knowledge of how contraband

15   was hidden in mail, how often contraband was detected in letters or other mail that would be

16   affected by the postcard-only policy, or why searching letters was a less effective means of

17   locating contraband.

18        The court recognizes that defendant need not prove there have been past episodes of

19   contraband entering the Jail through the mail to establish a rational relationship to the policy.  <u>See</u>

20   <u>Casey v. Lewis</u>, 4 F.3d 1516, 1521 (9th Cir. 1993).  Nonetheless, a showing that contraband had

21   been a problem supports defendant's contention that the postcard-only policy is rationally related

22   to increasing jail security.  <u>See</u> <u>Mauro</u>, 188 F.3d at 1060 n. 3 ("Although it is not required that

23   prison officials be able to show that the prohibited materials have actually caused problems in the

24   past, . . . their ability to do so certainly strengthens their case." (Internal citations omitted.))  And,

25   defendant presents no other evidence supporting the policy as defendants in other cases have

26   done.

27        For example, in <u>Casey</u>, the Ninth Circuit considered substantial evidence in determining the

28   constitutionality of a prison prohibition on contact visits between inmates and their attorneys.  In

considering the first Turner factor, the Ninth Circuit held that the asserted justifications for the policy – prevention of escape, assault, hostage-taking, and the introduction of contraband – were sufficient to establish a rational relationship to the no contact visit policy even though the state failed to show contact visits had resulted in those problems in the past.  4 F.3d at 1520-21.  The court held that the affidavits and deposition testimony of the prison warden, deputy warden, and assistant director of the Department of Corrections that "contact visits between inmates and their attorneys creates an intolerable risk of a security breach" was entitled to deference.  Id. at 1521.  Because that belief was not unreasonable, it was sufficient to create "a rational relationship between the Department of Corrections' policy and its legitimate penological concerns."  Id.

The undersigned's determination that defendant has failed to show the objective of reducing contraband was rationally related to the postcard-only policy is supported by a number of decisions from the Ninth Circuit rejecting claims that policies broadly prohibiting certain classes of mail have a rational relationship to enhancing security.  See Prison Legal News v. Lehman, 397 F.3d 692 (9th Cir. 2005) (ban on non-subscription bulk mail and catalogs not reasonably related to objective of reducing contraband); Ashker v. Cal. Dep't of Corr., 350 F.3d 917, 923 (9th Cir. 2003) (invalidating requirement that books mailed to inmates have an approved book label or vendor stamp as not rationally related to reducing contraband, in part because correctional institution searches mail regardless); Morrison v. Hall, 261 F.3d 896, 902 (9th Cir. 2001) ("[A]lthough the defendants presented evidence that contraband is sometimes included in bulk rate, third, and fourth class mail, the defendants have failed to present any evidence that the risk of contraband in first or second class mail is any lower than the risk of contraband in mail that is sent bulk rate, third, or fourth class."); Prison Legal News v. Cook, 238 F.3d 1145, 1150 (9th Cir. 2001) (correctional institution "has presented no evidence supporting a rational distinction between the risk of contraband in subscription non-profit organization standard mail and first class or periodicals mail").

Similarly, defendant fails to show how the new policy would have, in fact, resulted in reduced time processing mail.  Defendant presents only evidence showing that the Jail processed 1,200 pieces of incoming mail each week on average.  (DSUF #18.)  Of course, only some of that mail

28

1   would be affected by the postcard-only policy because the policy specifically excluded a wide

2   variety of mail.  Defendant presents no evidence comparing the time it took to process the letters

3   that would be affected by the policy with the time it would take to process incoming postcards,

4   including incoming stamped postcards.  In addition, as noted by another court, defendant does not

5   address the fact that due to their smaller size, postcards could result in an increase in the number

6   of weekly pieces of mail received by the Jail.  County of Ventura, 2014 WL 2736103, at *7.

7        On the record presented, this court finds defendant has failed to establish that there are no

8   genuine issues of material fact regarding the postcard-only policy.  See Harker, 2016 WL 759302,

9   at *6 (summary judgment for defendants not appropriate because "factual questions remain

10   regarding the relationship between the postcard-only policy and Defendants' interests in security

11   and efficiency, including the extent of Defendants' security and efficiency needs—how much

12   contraband was coming in through the mail before, and how much time was spent checking for

13   it?—and how well the postcard-only policy addresses these needs.").  Because defendant has not

14   shown more than "simply a logical relation" between the postcard-only policy and its legitimate

15   penological goals, the undersigned finds defendant fails to establish there are not genuine issues

16   of material fact regarding the first Turner factor.  See Beard, 548 U.S. at 533.

17        Satisfaction of the first Turner factor is a sine qua non to determine the constitutionality of a

18   prison regulation.  Morrison, 261 F.3d at 901 (citing Walker v. Sumner, 917 F.2d 382, 385 (9th

19   Cir. 1990)).  Therefore, the undersigned need not address the remaining Turner factors and will

20   recommend defendant's motion for summary judgment be denied.

21                            **PLAINTIFF'S REQUEST FOR SANCTIONS**

22        In his opposition to the motion for summary judgment, plaintiff requests sanctions against

23   defendant for filing the motion.  (ECF No. 56 at 1-2.)  Plaintiff argues that defendant refused to

24   comply with plaintiff's interrogatories, which denied plaintiff the right to conduct discovery.

25   Plaintiff further argues that because the court had not yet ruled on plaintiff's motion to compel,

26   defendant should have known the court would not grant summary judgment.  Plaintiff posits that

27   defendant's motives for making the motion were, therefore, bad faith and to delay these

28   proceedings.

None of plaintiff's bases for sanctions are tenable.  First, plaintiff did not have a right to the discovery he claims defendant refused to provide.  The information plaintiff sought from defendant through discovery was "contact information for the inmate witnesses."  (ECF No. 56 at 1, 2.)  Plaintiff's motion to compel defendant to provide that information was denied because it was untimely and because the information plaintiff sought was not relevant to his sole claim. Plaintiff had been informed previously that he could assert a claim only on his behalf, not on behalf of third parties, including other inmates.  (Apr. 6, 2016 Order (ECF No. 55) at 5.)

Second, the implication that defendant filed the motion prematurely is not supported. Defendant filed the motion for summary judgment on the last day permitted for filing pretrial motions.  Accordingly, it was timely.  To the extent either party felt the court should have ruled on the motions to compel before the deadline for filing pretrial motions or before they were required to oppose a motion, a simple request for an extension of time could have been made. Neither party made that request.  For these reasons, the court will recommend plaintiff's request for sanctions be denied.

Accordingly, IT IS HEREBY RECOMMNEDED as follows:

1.  Defendant's motion to strike plaintiff's opposition filed April 11, 2016 (ECF No. 57) be denied;

2.  Defendant's motion to strike plaintiff's opposition documents filed August 8, 2016 (ECF No. 73) be denied;

3.  Defendant's motion for summary judgment (ECF No. 52) be denied; and

4.  Plaintiff's request for sanctions (ECF No. 56) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The

////

1   parties are advised that failure to file objections within the specified time may result in waiver of

2   the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   Dated:  December 29, 2016

4

5   _____

6   DEBORAH BARNES
    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11   DLB:9
     DLB1/prisoner-civil rights/dear2064.msj

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28